S. C. CULBERTSON, Appellee, v. F. E. SMITH, Appellant.

**REFORMATION OF INSTRUMENTS: Evidence—Weight and Sufficiency.** 1 Evidence reviewed, and held insufficient to justify the reformation of a contract for the sale of real estate.

**SPECIFIC PERFORMANCE: Waiver.** Specific performance will be 2 refused to one who has never been able himself to perform, and who has always insisted on a performance by his adversary not justified by the contract.

**VENDOR AND PURCHASER: Rescission.** A purchaser of a farm who 3 has taken possession by tenant may not effect a rescission unless he offers (1) to surrender possession and (2) to reimburse the vendor for the fair and reasonable value of the use of the premises while occupied by said tenant.

*Appeal from Boone District Court.*—R. M. WRIGHT, Judge.

MARCH 14, 1922.

SUIT by plaintiff to rescind, and a counter suit by the defendant to specifically enforce, a contract of purchase and sale of real estate. There was a decree for the plaintiff, and defendant appeals.—*Affirmed in part; reversed in part.*

*T. J. Mahoney* and *F. L. Mackay,* for appellant.

*Wilson & Harris* and *F. W. Ganoe,* for appellee.

EVANS, J.—I. The defendant was the vendor and the plaintiff the vendee in the contract. The contract was entered into on June 30, 1919. It purported to be a contract of sale and purchase of a farm of 240 acres, for a consideration of $54,000. Two thousand dollars was paid by the plaintiff at the time of the execution of the contract; $14,000 additional was to be paid on March 1, 1920; and a purchase-money mortgage or mortgages for the remaining $38,000 was to be executed by the plaintiff to the defendant, and was to run for 10 years, at 6 per cent annual interest. However, plaintiff had the privilege to negotiate a first mortgage upon said farm for as large a loan as he could secure, and to apply the proceeds thereof upon such balance of purchase price, and to execute to the defendant his note and second mortgage for the remainder, to become due in 10 years, at 6 per cent. The contract was to be carried out on March 1, 1920, at the Farmers & Merchants National Bank of Jefferson, Iowa, which was the plaintiff's place of business, he being the president of such bank. On March 25, 1920, the plaintiff notified the defendant of a purported rescission of the contract, and demanded the repayment to him of the $2,000 paid by him thereon. On May 14th, he began this action to recover such payment. The defendant appeared in the action and resisted the rescission and filed a counterclaim, asking a reformation of the contract and its specific enforcement as reformed. The trial court refused the reformation and dismissed the counterclaim and entered judgment for the plaintiff for $2,000 and interest.

A logical consideration of the case requires us to consider first the counterclaim of the defendant. Two questions are involved in it:

1. REFORMATION OF INSTRUMENTS: evidence: weight and sufficiency.
(1) · Was he entitled to reformation of the contract?

(2) Was he entitled to specific performance?

To get the defendant's point of view, we must take notice of the state of his title at the time that he entered into the con-

tract. He had but recently purchased this farm from Hausserman, under a contract of sale which was also to be performed on March 1, 1920. He was, therefore, the equitable owner of the property, under an unperformed written contract. The purchase price at which he bought was $48,000, of which he paid $2,000 down, and was to pay $8,000 on March 1, 1920. The remaining $38,000 was to be provided for in the following manner:

"F. E. Smith shall have the privilege of making a government loan on the above described land in an amount up to $24,000, if this amount can be secured; or if this amount cannot be secured, F. E. Smith shall make a loan for the largest amount that may be secured from the government. The entire proceeds of this loan shall be paid to Charles Hausserman by F. E. Smith. * * * The difference between the first loan or government loan that is to be made by F. E. Smith at settlement time and the cash paid on the execution of this contract and the cash to be paid March 1, shall be carried back on a second mortgage by Charles Hausserman for a period of 10 years at 6 per cent annual interest, with privilege of optional payments."

It will be noted that the general plan for the payment of the final $38,000 was similar in the two contracts. The reformation prayed was that the contract should be so changed as to provide:   (1) That Culbertson should take his deed from Hausserman; (2) that Culbertson should make his second mortgage or mortgages to Hausserman; (3) that Culbertson should obtain not less than $19,000 by first mortgage through third parties; and that the second mortgage to be executed by him should not exceed $19,000.

There was also a prayer for reforming the description, to which we need give no attention, it being conceded that there was a mistake in the description, and both parties are fully agreed on the correct description, which was adopted by the court in its decree. The evidence in support of the claim of reformation was meager and unsatisfactory. The form of contract now set forth in the counterclaim existed more in the mind of the defendant that in the actual conversation of the parties. It would, of course, have been a convenience to the defendant to have withdrawn from the chain of title, and to have made his purchaser the grantee of his vendor. Such a course, if followed,

would not, in legal effect, have made a good title to the plaintiff. Smith was a married man. His wife had not signed the contract to Culbertson. If Culbertson had accepted a conveyance from Hausserman, it would not have cut off the inchoate right of Mrs. Smith. This is a circumstance proper to be considered, in weighing the evidence in support of the claim of reformation. The substance of the defendant's evidence in this regard is that he explained to Culbertson what his contract was with Hausserman, and that he wanted his contract of sale to conform thereto. From this information so given to Culbertson, it is a mere deduction on defendant's part that Culbertson was to take his deed from Hausserman, or was to execute his mortgages to Hausserman. There was, in fact, a very close conformity between the two contracts. The third specification of reformation assigned is not consistent with anything contained in either contract. It appears from Smith's testimony that this specification is based upon an *oral* understanding between him and *Hausserman,* which was not included in his written contract. Under the *written* contract, Smith could have settled with Hausserman by giving his note and mortgage for $38,000, due in 10 years, at 6 per cent. Culbertson could have settled the $38,000 item of his purchase price in precisely the same manner with Smith. Without attempting a more detailed discussion of the evidence, it is sufficient to say that we agree with the finding of the trial court that there was not sufficient evidence to justify the reformation prayed.

This brings us to the question whether the defendant was entitled to specific performance of the contract as written. It is very doubtful, under the pleadings, whether the defendant was praying for specific performance of the contract if reformation be denied. It may be that we should treat the prayer for general equitable relief as sufficient for that purpose. Defendant is under the disadvantage now that his conception of what the contract ought to have been, as disclosed in his counterclaim, has colored all his conduct with reference to the performance thereof, and has put him in the position of doing and offering otherwise and less than his contract required. The defendant resided at Perry, in Dallas County; the plaintiff resided at Jefferson, in Greene

2. SPECIFIC PERFORMANCE: waiver.

County. The contract, by its terms, was to be performed at plaintiff's bank in Jefferson. The defendant did not appear at Jefferson at all on March 1st, nor for many weeks thereafter, if at all. Neither did he perfect his own title to the farm by completing settlement with Hausserman. He excuses his failure to appear on March 1st by the fact that, on February 25th, he received from the plaintiff the following letter:

"F. E. Smith,
"Perry, Iowa.
"Dear Sir:
    "I have been disappointed in my loan on this place, and can't tell just when will be able to get it.
    "I had arrangements made for some loans and just last evening received a telegram stating that they would have to cut down the amounts of some of them, consequently it places me in a position where cannot tell just what I can do."

    This letter might naturally be construed as a request for time, and perhaps it was so intended by the writer. If he (defendant) had answered the letter and consented to the time, his position would be very plausible. He did not do so. He wholly ignored it. If the writer, therefore, had hoped for an extension of time, he did not get it, and he remained under the continuing duty on his own part of being prepared to perform his contract on the date fixed, time being of the essence of the contract. It devolved upon him to be ready upon that date to pay $14,000 and to execute a mortgage or mortgages for $38,000 either to Smith or in part to such other person as would loan him the funds at a cheaper rate of interest. Culbertson's evidence is that he was able and ready to perform on that date, although he had not been able to secure funds on first mortgage at a 5 per cent rate of interest, as he had hoped to do. Up to March 25th, Smith had done nothing in the way of performance, as between him and Culbertson. Smith was evidently expecting Culbertson to accept a deed from Hausserman and to execute his mortgage accordingly. Hausserman would not accept a mortgage in excess of $19,000, because of a verbal understanding with

Smith. There was no such qualification upon the rights of Culbertson, as between him and Smith.

Twenty-four hours before he served the notice of rescission, Culbertson served a written tender of performance. It is now urged for Smith that the time elapsing between the tender of performance and the notice of rescission was unreasonably brief. If Smith was entitled at all to a formal tender, and if, notwithstanding the notice of rescission, he had been reasonably prompt in his response to the written tender thus made, we should incline to the view that he was entitled to more time than 24 hours, to comply with the tender. He was not prompt. It was several weeks before he paid any attention to it. On or about May 17th, he made a form of settlement with Hausserman, whereby he obtained from Hausserman a warranty deed, with the name of the grantee left blank. He purported to leave this deed with the bank at Perry, for the use of Culbertson, intending that, when Culbertson executed mortgages satisfactory to Hausserman, his (Culbertson's) name could be inserted as grantee in Hausserman's deed. This was not a performance of the contract. In order to settle with Hausserman, he (defendant) had to negotiate mortgages upon the land. He negotiated a mortgage loan with a third party for $19,000, due in 10 years, at 6½ per cent interest, with the privilege of payment after 5 years. For the remaining $19,000 he executed second mortgages to Hausserman for $10,000 and $9,000 respectively. All of this was done after the commencement of this suit. Later, he executed his own deed of the premises, which was duly joined in by his wife. This was a special warranty deed, and purported to convey the property to Culbertson, subject to the mortgages just described. The effect of this deed would have been to charge Culbertson with one mortgage of $19,000 at 6½ per cent interest; whereas, under his contract, he was entitled to a rate of interest at 6 per cent upon the entire sum for 10 years. Even this deed was tendered for the first time at the close of the trial, in October, 1920. In view of the defendant's long insistence upon a form of performance by the plaintiff that was not warranted by his contract, he is in no position to claim that the plaintiff's notice of rescission was premature, or that it failed to give him a reasonable time for per-

formance. He has never shown himself ready to perform the contract substantially as written. He has clearly lost his right to enforce specific performance.

II. We turn to the case for the plaintiff. He sued for and recovered the sum of $2,000, which he had paid as a first payment. He also is under the disadvantage of having attempted a rescission imperfectly. He rented

3. VENDOR AND PURCHASER: rescission.

the land by oral lease in the fall of 1919. His tenant went into possession thereof shortly before March 1, 1920, and had continued in possession up to the time of the trial in the court below. This circumstance might have become important as a waiver of time of performance, if the defendant had acted promptly thereafter. The fact remains that a complete rescission on plaintiff's part required that he surrender or offer to surrender the possession. No reference was made to the subject in his notice. He did thereafter and throughout the trial renounce all claim to the possession or to the rents. During the trial, he tendered to the defendant the right to collect the rents from the tenant. This seems to have been regarded as sufficient in the trial court, but no reference was made to it in the decree. The lease was oral. Its terms were unknown to the defendant. They were not disclosed upon the trial, except in most general terms. No rate of rent or share was stipulated.

In so far as the parties mutually delayed the date of settlement, it was to the mutual interest of both of them that the property should be appropriately occupied. Possession thus taken by the plaintiff would not necessarily stand in the way of a rescission, even though it were impracticable to oust a tenant while his crops were growing. That would be an incident in the relation of the parties which the court could adjust equitably in the decree. We think, however, that it was not equitable to permit the plaintiff to make a slipshod lease, and then to direct the defendant to make the tenant his own, and to get what rent he could from him. Under the circumstances shown, equity required that the plaintiff should be charged with the fair and reasonable value of the use of the premises while occupied by his tenant, and this should be tendered by him as a condition to any recovery. Manifestly, he was not entitled to recover

more than the surplus, if any, over and above the reasonable value of the use which he had had. The burden of tender was upon the plaintiff. If he failed to make it in his notice of rescission, he was no less under the burden of making it at the trial, as a condition to relief. For want of such tender on his part, there is no evidence in the record as to what the reasonable value of the use of the farm was. On the whole, the record and the conclusion we reach thereon present a peculiar aspect. The defendant has not only breached the contract, but he has finally put it out of his power to perform it, by executing an incumbrance at a 6½ per cent rate of interest. He therefore is not entitled to enforce specific performance, and we affirm that adjudication by the lower court.

On the other hand, the plaintiff has waived specific performance, and has elected to claim a rescission. He purported to work a complete rescission by a notice, and on that theory brought his action at law, to recover the payment made by him. The case went to the equity side of the court, upon the application of the defendant, and it has been so tried. We must hold that the plaintiff did not accomplish a rescission by his notice, for want of an offer to surrender the possession, and of a tender to make recompense for such possession and use. His law action might have been abated upon this ground. Such abatement, however, would not bar his right to make later tender, and to accomplish a rescission by decree of the court. In any event, the plaintiff is in no position, in a court of equity, to demand a recovery of the payment made by him, until he has first paid or tendered full compensation for the benefits received.

Under these circumstances, we deem it appropriate to order a remand of the plaintiff's case. As to the counterclaim of the defendant, the decree entered below will be affirmed. As to the petition of plaintiff, it will be reversed, and the cause will be remanded to the district court, with leave to the plaintiff to make appropriate tender, and with leave to the court to hear additional evidence on the question of the value of the use of the premises, and to enter final decree accordingly.—*Reversed in part; affirmed in part.*

STEVENS, C. J., ARTHUR and FAVILLE, JJ., concur.