E. O. RICHMAN et al., Appellants, v. IOWA FARM LAND COMPANY et al., Appellees.

**SPECIFIC PERFORMANCE:   Contracts Performable—Mutual Default.**
1   The court has a wide discretion in granting or refusing specific performance between parties mutually in default.   Record reviewed, and *held* that the equities were properly balanced by granting specific performance against such a party, who was contending for rescission.

**VENDOR AND PURCHASER:   Performance—Mutual Default.**   Mutual
2   default of parties to a contract for the exchange of properties automatically extends the time of performance, with the right in either to tender performance and thus place the other in default.

*Appeal from Poweshiek District Court.*—H. F. WAGNER, Judge.

MARCH 4, 1924.

ACTION in equity, to rescind a contract for the exchange of properties.   Answer and cross-petition by defendants, praying specific performance of the contract.   The court dismissed plaintiffs' petition, and granted the prayer of the cross-petition.   Plaintiffs appeal.—*Affirmed.*

*Reed & Reed* and *Frank Bechly,* for appellants.

*Roy Kelley* and *Campbell & Campbell,* for appellees.

STEVENS, J.—This is an action for the rescission and cancellation of a contract for the exchange of properties. The contract is dated August 14, 1920, and by its terms was to be finally consummated March 1, 1921. Appellants agreed to transfer to appellees a stock of merchandise, some fixtures, and a lot in Brooklyn, and to pay them on March 1, 1922, with interest at 7 per cent per annum from and after that date, $4,045, or a total consideration of $15,900. Appellees agreed to convey to appellants a farm in Cedar County for the agreed consideration of $52,500. The Brooklyn real property was incumbered by a mortgage of $3,500, which appellees assumed and agreed to pay, with interest thereon from and after August 13, 1920. · The Cedar County farm was incumbered by two mortgages, aggregating in amount $36,600, which appellants agreed to assume, with interest thereon from and after March 1, 1921, at 5½ per cent per annum. Appellants further agreed to pay seven twelfths of the taxes assessed against the Brooklyn real property for the year 1920, which the evidence shows amounted to $42.43, the remaining five twelfths amounting to $30.31, to be paid by appellee. Both parties agreed to furnish abstracts showing a good and merchantable title to their respective tracts of real estate, free and clear of all liens and incumbrances excepting those assumed under the contract. The contract further provided for the assignment of all insurance policies held by the respective parties upon a pro-rata basis. Deeds were executed by the respective parties and deposited in the First National Bank of Brooklyn in escrow, to be held until the contracts were finally performed. Immediate possession of the Brooklyn property was taken by appellees, who thereafter sold the stock of hardware and fixtures. Possession of the Cedar County farm was taken by appellants on March 1, 1921, and the farm was by them leased to a man by the name of Cox.

1. SPECIFIC PERFORMANCE: contracts performable: mutual default.

When March 1st arrived, neither party was prepared to furnish the other with an abstract showing a merchantable title. There was a third mortgage upon the Cedar County farm for $2,400, and on May 18, 1921, a judgment against appellees in favor of the People's Savings Bank for $11,290.95, principal debt, and $171.40 costs, became a lien thereon. The interest on

the $3,500 mortgage on the Brooklyn property, which amounted to $210, came due January 1, 1921. Of this amount, appellants were obligated to pay $130.08, and appellees $79.92. On March 29, 1921, appellants paid $125 of the amount owed by them, and on December 6th, appellees paid the balance, amounting to $93. Some time before this action was commenced, which was on or about October 27, 1921, an action was commenced by the holder thereof to foreclose the $2,400 mortgage upon the Cedar County farm. This mortgage was satisfied and released of record November 23, 1921, and the judgment lien above described on the preceding day. No abstract showing a merchantable title, as required by the contract, was furnished appellants by appellees prior to the commencement of this action, and it is now contended by counsel that the abstract offered in evidence upon the trial is defective, and does not meet the requirements of the contract.

Regarding the title to the Brooklyn real property, the facts, as claimed by appellees, are as follows: The abstract to the Brooklyn property, together with the affidavit designed to correct some slight defect in the record title, was forwarded by U. M. Reed, attorney for appellants, to Roy Kelley, a member of the appellee company at Des Moines, Iowa, on March 30, 1921. Possession of this abstract was retained by Kelley or some other representative of appellees until this cause was reached for trial, in May, 1922. So far as the evidence shows, the certificate of the abstracter was not corrected. The adjustment of the insurance upon the respective properties left appellees indebted to appellants in the sum of $55.63. Appellants defaulted in the payment of taxes to the extent of $5.81, and in the payment of interest on the Brooklyn loan to the extent of $5.08, a total of $10.89. This default continued until the time of the trial. Neither party, prior to the trial, tendered to the other an abstract showing a merchantable title, nor did appellants tender a note for the $4,045 which they had agreed to pay as a part of the consideration for the Cedar County farm. The failure on the part of appellants is explained on the ground that appellees retained possession of the abstract. On June 3, 1921, appellants' attorney wrote appellees that he was instructed by them to commence an action for damages unless an abstract

to the Cedar County land showing merchantable title was furnished within ten days. On June 14th, Mr. Kelley, for appellees, wrote appellants' attorney, inclosing an affidavit which was designed to correct a defect in the description of the Cedar County land. To this letter Mr. Reed responded on June 20th, declining to give his unqualified approval to the affidavit without opportunity to further examine the abstract, but expressing the opinion that it was probably all right. Oral negotiations intervened between the period covered by the above correspondence and the service on appellees, on October 26, 1921, of a written notice of rescission. Mr. Reed, for appellants, also addressed a letter to Mr. Kelley on September 1, 1921, referring to a recent promise made by him, and inquiring what appellees were going to do about adjusting the title to the Cedar County farm. No reply was received to this letter.

The court in its decree dismissed plaintiffs' petition, and ordered that judgment be entered against appellants for $4,045, with interest thereon at 7 per cent from March 1, 1921, together with the costs of suit, and directed that the deeds held in escrow be delivered to the proper parties.

It is disclosed by the foregoing recital of the record that neither party was ready to perform the contract on March 1, 1921, according to its terms, and that appellants did not insist that same be performed until the letter of June 3d to the land company, in which Mr. Reed threatened to commence an action for damages if a merchantable abstract was not furnished within 10 days. The demand therein made was not insisted upon, but was immediately followed by negotiations looking to the perfection of the abstract to the Cedar County farm at a later date. Appellants did not insist, on March 1st, on the immediate payment and release of the $2,400 mortgage on the Cedar County farm, but, on the contrary, appear to have consented that it be permitted to run for a short time. Of course, appellants at no time consented to an extension of time in which the judgment lien for over $11,000 on the farm might be discharged, but this judgment does not appear to have entered particularly into the negotiations of the parties, further than so far as its satisfaction was necessary to the perfection of the abstract, to make it show a merchantable title. Appellants were not careful to pay

either the full amount of interest on the $3,500 mortgage or of the portion of the taxes required by the contract to be paid by them. Appellees were, of course, in no way prejudiced by this failure of appellants', because they were indebted to them in a larger sum, against which these items might be offset. As stated, appellants assumed possession, which they have since retained, of the Cedar County farm, on March 1, 1921, with full knowledge of the condition of the title thereto, and appellees took immediate possession of all of the Brooklyn property on or about the date of the contract,—that is, August 14, 1920. Subsequently, and prior to the service of the notice of rescission on October 26, 1921, appellees sold the stock of merchandise and fixtures in the building purchased as a part of the consideration for the farm. Appellants do not plead or claim fraud in the transaction. The sole ground upon which rescission and cancellation of the contract are sought is the default of appellees in the performance on their part of the contract. Appellants have received the rental from the farm, and appellees from the Brooklyn property, since they entered into possession thereof on the dates shown.

The two ultimate propositions involved upon this appeal are: (a) The question of appellants' right to the rescission and cancellation of the contract upon the ground of nonperformance; and (b) the question of appellees' right, upon their cross-petition, to a decree for the specific performance of the contract. The right of a party to a contract for the sale or exchange of real property to rescind the same for the failure of the other party to furnish an abstract showing the title to be as contracted, is well established in this state. *Bartle v. Curtis,* 68 Iowa 202; *Lessenich v. Sellers,* 119 Iowa 314; *Gray v. Central Minn. Immigration Co.,* 127 Iowa 560; *Culbertson v. Smith,* 193 Iowa 436; and many other cases not necessary to cite. Likewise,

2. VENDOR AND PURCHASER: performance: mutual default.
the law is well settled that specific performance of a contract will not be granted to a party in default. As both parties were in default on March 1, 1921, the contract was on that account extended. This, of course, both parties concede. No time was ever fixed after March 1st by the parties for the consummation of the contract. Either could have placed the other in default by a tender of

performance. Neither party actually tendered performance until the time of the trial, when appellees tendered an abstract which they claim showed a merchantable title to the Cedar County land. Appellants did not perfect the abstract to the Brooklyn property nor tender payment of the shortage in the taxes and interest which the contract required them to pay. The equities of the situation are emphasized by the absence of any claim of fraud on the part of appellants or of prejudice or damages on account of appellees' delay in perfecting the title to the farm. The law is not difficult, and, under the circumstances disclosed, a large discretion was conferred upon the court in the adjudication of the equities of the case. The court, in an exhaustive and carefully prepared written opinion, found the equities in favor of performance of the contract, and therefore refused rescission and cancellation.

Both parties manifestly understood that the exchange of possession of the respective properties consummated on March 1, 1921, was upon condition that each would proceed with reasonable promptness and expedition to perfect their respective abstracts of title. This they proceeded, but in a rather dilatory way, to carry out. Notwithstanding the right of each to terminate the contract at any time by a demand for strict performance, mutual concessions were repeatedly granted, actually or by the acquiescence of the parties. The court could not, in weighing the equities, wholly ignore the conduct and concessions of the parties, nor base its decision upon the shifting of the technical rights of the respective parties. Appellants do not claim that they ever suffered any damages on account of the delay, nor does it appear that other equitable interests or considerations ever intervened to make a decree for the specific performance of the contract inequitable. It is true that appellants gave notice of their election to rescind the contract the day before their petition therefor was filed. It is also true that what would ordinarily be a reasonable time elapsed after the letter of September 1st, written by Reed to Kelley, before notice of rescission was served. This letter did not in terms demand immediate performance. Appellees, within a short time after this action was commenced, procured a release of the $2,400 mortgage and also satisfaction of the judgment lien, and, at the

time of the trial, tendered an abstract, which we will presently consider. The situation of the parties, so far as shown by the evidence at the time of the trial, was changed only by the sale of the merchandise and fixtures by appellees. It seems to us that, under all of the circumstances, the decree entered in the court below does substantial justice between the parties, and is in harmony with the discretion with which the court is clothed in cases of this character, unless the abstract tendered by appellees did not comply with the contract.

The Cedar County land lies partly in the southeast and partly in the southwest quarter of Section 16, Township 79, Range 4, and contains 110 acres, more or less. A plat attached to the abstract shows that the northeast corner is cut off by a railroad right of way. In some of the descriptions, the railroad right of way, which forms the boundary of the portion cut off from the northeast corner of the tract, is referred to as the Chicago, Rock Island & Pacific; in others, as the Burlington, Cedar Rapids & Northern. It is insisted by counsel for appellants that appellees' abstract, for this reason, does not show a merchantable title. An effort was made to correct this defect by affidavit. The right of way occupies no portion of the land conveyed. The description, when read in its entirety, is not doubtful, and the defect, if any, is technical, and does not affect the title to the land.

It is our conclusion, therefore, that the parties hereto have so conducted their negotiations during the time both were more or less in default that they should be held to have waived their right to performance within the strict terms of the contract, so far as the element of time enters. The judgment and decree below should be affirmed. As both parties are somewhat at fault, the costs in this court will be taxed to them in equal proportions.—*Affirmed.*

ARTHUR, C. J., DE GRAFF and VERMILION, JJ., concur.