H. R. DAVIS et al., Appellants, v. WILHELMINA NORTON, Executrix, Appellee.

REFORMATION OF INSTRUMENTS: Evidence—Insufficiency. A contract for the sale and purchase of real estate will necessarily not be so reformed as to render it a contract for sale at a stated sum per acre, when the testimony preponderates in favor of a contract for a lump-sum price.

Headnote 1: 34 Cyc. p. 984.

Headnote 1: 23 R. C. L. 367.

*Appeal from Adams District Court.*—H. H. CARTER, Judge.

OCTOBER 19, 1926.

Suit in equity, to reform a contract of sale of real estate and a warranty deed given pursuant thereto, so as to show therein that the agreed contract price was $160 per acre, and that plaintiff be awarded recovery for overpayment thereon, such overpayment resulting from a shortage of the acreage represented by the vendor. The issue was made by general denial. The trial court found the evidence insufficient to warrant granting relief. The plaintiff appeals.—*Affirmed.*

*Meyerhoff, Gibson & Watts,* for appellants.

*Stanley & Stanley* and *Higbee & McEniry,* for appellee.

EVANS, J.—It appears from plaintiff's evidence that, on January 28, 1914, he entered into a written contract with one Norton, since deceased, for the purchase of a certain farm. On March 1, 1918, the real estate involved in the contract was conveyed by warranty deed by Norton to the plaintiff. The land described in the contract and deed consisted of several tracts and lots. Neither the contract nor the deed specified any acreage for any tract, nor any total acreage for the whole; nor was there any price fixed upon any separate tract. The consideration was stated both in the contract and the deed in the lump sum of $26,000.

The contention of plaintiff is that the real agreement antecedent to the written contract was that "he should pay $160 per acre," and that it was represented to him that the farm comprised 166½ acres. It is further contended that a survey made in January, 1923, disclosed an acreage of 148.78 acres, and no more. Plaintiff asks to recover the difference in value, computed on the basis of $160 per acre, for the shortage of 17.72 acres. No claim of shortage was made at any time during the lifetime of Norton. The claim therefor, being presented against his estate, is now defended by his executrix. The plaintiff's case rests in the main upon his own testimony, with some corroboration of one or two details from other witnesses. The plaintiff testified that his attention was first directed to the farm in question in the fall of 1913, by a real estate agent, Mack, who quoted him a price of $160 per acre, and who told him that Norton said that the farm contained 166½ acres. Mack died before the date of the trial, and his testimony was not available to either party. Mack showed several farms to the plaintiff, for which he purported to have an agency. The plaintiff said to Mack that he would take the farm at the quoted price, if Norton would take a quarter section of Canada land at $35 per acre. It is undisputed that $26,000 was the price at which the farm was put in, and was the price stated in the written contract. It is undisputed also that Norton took the Canada land at the sum of $4,000. The scope of Mack's agency is not made to appear by any direct evidence, and plaintiff relies for proof of such agency upon the doctrine of ratification. The ratification contended for is that Norton ultimately sold the land by execution of the written contract. There is no evidence from which it can be determined whether Mack was an agent merely to find a purchaser, or an agent to make the sale. This is not an action for false representations or on a covenant of warranty. The objective of this action is to determine the real intent and understanding of both parties at the time the written contract was entered into. While some incompetent evidence on the part of the plaintiff crept into the record as to personal transactions, the plaintiff does not contend for the competency of such evidence. The corroborating evidence introduced by him was that of certain witnesses who testified to conversations with Norton wherein he said he had sold his farm for $160 per

acre. Evidence also was introduced by him to the effect that, at a time subsequent to the sale, Norton had said that the farm contained 166½ acres. This, in general terms, is the nature of plaintiff's evidence. The trial court deemed it not sufficiently clear and convincing to warrant a decree. We have carefully read the evidence, and are forced to the same conclusion. A careful analysis of the evidence of the plaintiff discloses that it is not wholly consistent with itself. A part of the plaintiff's evidence is summed up in his brief as follows:

"Norton had an examination made of the Canada land, and thereafter Mack told Davis that Norton would sell, but would only pay $30 an acre for the Canada land. Mack and Davis together then figured that, at the price asked by Norton, Davis would have to pay $26,640 for the Norton land. Davis told Mack that he couldn't accept $30 an acre for the Canada land, because Norton had his land priced too high."

It will be noted at this point that Mack reported Norton as willing to pay $30 an acre for the Canada land, and to take $160 for his own, computing the same at 166½ acres. The plaintiff represents himself as having declined such offer. An acceptance of this offer would have made the exchange price to be paid by the plaintiff $21,840. The net exchange price which the plaintiff did ultimately pay was $22,000; and yet the plaintiff represents Mack, following plaintiff's refusal to accept $30 an acre, as having labored successfully with Norton to reduce his price. The ultimate prices, as agreed on without dispute, were $25 an acre for the Canada land, amounting to $4,000, and $26,000 for the Norton farm.

On the basis of 166½ acres, the purchase price of $26,000 would amount to $156.13 per acre. It is not claimed that such price was ever talked. On the basis of 160 acres (which was the acreage at which the farm was assessed), the price would be $162.50. There is no claim that such price was ever talked. It does not appear by any direct evidence that Mack ever brought the plaintiff and Norton together. It does not appear that he was ever present with both of them. He was not present when the written contract was signed. The only person other than the plaintiff and Norton was Stanley, an attorney who drew the contract. He testified, as a witness for the defendant, to the effect that, at the time of the signing of the contract, Norton

had said that the farm was assessed at 159½ acres, but that he believed it did not contain so much. The plaintiff testified to the contrary, and testified to representations then made by Norton. His evidence, however, was clearly incompetent. On the other hand, stress is laid by the plaintiff upon the fact that Stanley is an attorney of record in the present litigation. The fact is an important one, as bearing upon the weight of his testimony. It does not, however, render the testimony incompetent. It is the duty of the court always to give to such evidence great scrutiny, and to assume a bias on the part of the witness which may affect even his candid belief or recollection. This testimony has somewhat significant corroboration in the testimony of two assessors. One of these assessed the property to the plaintiff in the year 1915. It was carried upon the assessor's books as 159 or 160 acres. The plaintiff complained to the assessor that it was assessed at too large an acreage, and that its actual area was less than appeared upon the assessor's books. In 1917, plaintiff was assessed by another assessor, and made a like protest to such assessor.

More than four years elapsed between the making of the contract and the making of the deed. Both of them indicate a lump-sum price. The immediate circumstances of the transaction and the particular character and description of the farm lend themselves quite readily to the theory of a lump price. This farm contained valuable improvements. These were contiguous to the town of Corning. The separate value of the improvements is not shown in the testimony, but it does appear that they carried $6,000 or $7,000 of insurance. These improvements must be deemed to have been an important factor in the valuation of the farm as a whole. It cannot be assumed that the unimproved acres would carry the same value per acre without the improvements as would the farm as a whole, including the improvements. No evidence was offered to show the difference between what the farm was worth in its actual condition and measurement and what it would have been worth, had it contained 17.72 acres additional. The farm was so located as to be incapable of a single description. It consisted of six or eight lots or parcels, which were joined together in a body, but which were described separately, some of them by metes and bounds. A railroad right of way extended diagonally through the farm. This formed one

boundary line to several tracts. On its west and northwest boundary was the Nodaway River, which was a meandering stream. The irregularity of these boundary lines was such that only an expert could measure the areas. It appears from the evidence that Norton said that he had a part of it surveyed, but that the surveyors could not agree in their measure. The great difficulty of its measurement is indicated by the cost of such measurement that was incurred by the plaintiff preparatory to this action. The surveyor who measured it rendered a bill for $535, and the plaintiff claims to recover this amount as a part of his cause of action.

The record before us would warrant no other inference than that Norton never knew the exact area of the farm. If, nevertheless, he assumed knowledge, and made false representations concerning such area, then he would be liable for false representations. But the plaintiff charges no fraud. We think that the circumstances here indicated are more consistent with the theory of a sale at a lump price than they are with the theory of the plaintiff. We recognize that the plaintiff is put to a great disadvantage by reason of the death of Norton. But we cannot on that account add to the weight of the evidence produced. The situation thus created is not the fault of the defendant. If any fault there be, it must rest rather upon the plaintiff, who had abundant opportunity to have made his measurements and his demand for restitution during the life of Norton.

The foregoing will indicate in a general way why we agree with the trial court that the evidence produced by plaintiff was not of that clear and convincing character which would justify the relief prayed.

The decree entered below is, accordingly,—*Affirmed*.

DE GRAFF, C. J., and ALBERT and MORLING, JJ., concur.