ALICE SPALDING, Appellee, v. FLORENCE M. MCCARTNEY et al., Appellants.

October 23, 1928.

Rehearing Denied March 8, 1929.

*Sam Page,* for appellants.

*Brackney, Farr & Stockman,* for appellee.

Evans, J.—The following plat will be an aid to an understanding of the recitals and discussion in this opinion:

EXHIBIT C — PORTION OF REPLAT of COUNTRY CLUB PLACE an Addition to SIOUX CITY IOWA.

The defendants McCartney are husband and wife. They were formerly the owners of the three tracts of ground indicated on the plat as 113, 114, and 115,—the title being in the name of the wife, and the transactions pertaining thereto being conducted mainly by the husband. These tracts were part of an addition laid out by the Country Club Realty Company, and were acquired by the McCartneys from said company. The deed of conveyance to the McCartneys contained certain building restrictions, one of which was that not more than one dwelling house should be constructed upon the same tract. In the summer of 1923, some tentative negotiations were had between plaintiff and defendant McCartney (the husband) for the purchase of the north 100 feet of the west 150 feet of Tract 115. These dimensions were set by the plaintiff, as being her preference. The defendant expressed his acquiescence therein, but no agreement of sale was reached. At this point, one of the officers of the Country Club Realty Company, Webb, interested himself in the transaction. The deeds of conveyance given by the company of the tracts appearing upon the plat of its addition reserved to the grantor a considerable discretion and power of supervision over such tracts and the uses to which they should be put. It appears also from the record that the company was reluctant to permit an undue division of the tracts for improvement purposes. Through the efforts of Webb, a contract resulted between the parties, whereby the plaintiff agreed to purchase a fee title to the west 150 feet of Tract 115, subject to certain reservations. Pursuant to this contract, a deed was executed and delivered, which contained the reservations of the contract, somewhat amplified. These were as follows:

"Reserving, however, to the grantor, her heirs, administrators and assigns, a perpetual easement over and upon the South 50 feet of the above described West 150 feet of said Lot No. 115, for driveway and park purposes, the grantor reserving the perpetual right to construct such driveways as he may see fit over and upon said South 50 feet and to beautify and improve said South 50 feet by planting trees, shrubs, flowers, etc., reserving also to the grantor an easement for electric light and power wires over or under the West 150 feet of said Lot No. 115."

Such deed contained also other reservations, conforming to the restrictions upon the grantor's title obtained from the Realty Company, which need not be set forth herein. The plaintiff caused the south 50 feet to be measured and staked, and built upon the north 100 feet a valuable house and buildings appurtenant thereto. She also beautified her grounds by planting trees and ornamental shrubs. She also seeded the 50-foot strip to grass, for the purpose of a lawn. By reason of a mistake in measurements, her plantings of shrubbery extended slightly into the 50-foot strip. At the time of the transaction of sale between the parties, it was the intention of the McCartneys to build a dwelling house near the south line of the unsold part of Tract 115, and to locate such dwelling just east of the 50-foot strip, so that such strip would furnish an entrance from the boulevard to such dwelling; and this intention was known to the plaintiff. It was also known to both parties that such a location of the dwelling house would be in violation of the restrictions upon the defendants' title, except as such restrictions might be waived by the defendants' grantor, and perhaps by their present grantee. No such consent of the grantor's was ever obtained, and the defendants abandoned their purpose in that regard. In lieu thereof, they proposed to build a dwelling upon Tract No. 114, near the north line thereof, and to utilize the 50-foot strip as an approach thereto. Pursuant to their new plan, the McCartneys proceeded to lay out a driveway, in the summer of 1927. The plan of the driveway and of the beautifying thereof which was contemplated by the defendants had been sketched by the husband sometime previously, and was the following:

## EXHIBIT E.

### SKETCH FOR IMPROVEMENT OF EASEMENT TRACT.

*Additional Explanatory*

Dotted lines show offshoots from driveway to tracts 113 and 114, if desired by later improvements, present plan being to make access to tract 114 through rear of tract 115. Where no drive or plantings to be in lawn. It will be noted that all plantings are native growths.

#### Legend

1. Cottonwood.
2. Elderberry.
3. Black or Choke Cherry.
4. Blazing Star.
5. Clover.
6. Sumach or Dogwood.
7. Dogwood and Bitter Sweet.
8. Hazelnut (3).
9. Wild Gooseberry.
10. Golden Glow and Blazing Star.
12. Thorn Apple.
13. Gooseberry.
14. Pond with Cat-Tails.

For the purpose of carrying out his plan, he also caused the 50-foot strip to be measured. This measurement disclosed the fact that the shrubbery plantings of the plaintiff had extended slightly into this strip. He was engaged with an employee in breaking the ground. The work done encroached upon the plantings of the plaintiff, whereupon she challenged his right to proceed. She testified:

"That she next saw Dr. McCartney about 8 o'clock of the morning of the day the injunction was served on him. That he had a teamster ·with him, with horses and a plow. That he had stretched a line along the north side of the easement, as surveyed by Mr. Skeels, and that he was preparing to dig up a Japanese evergreen near that line, when she went out. That she told him to stop; that he kept on, and she then stepped over the tree, so that he couldn't dig it up. That he told her if she wouldn't let him dig, he would turn the teamster loose, and he would plow up the whole 50 feet, shrubs, grass, trees, and all. 'I took hold of the horses, so they could not move, and then he told me that he would call the police, if I did not get off the tract, and he went to a neighbor's, ostensibly to phone.'"

On the same day, she began this action. Her petition averred that the defendants were intending to build a small house upon Tract 115, in violation of the restrictions of their title. Upon the trial, it was conceded that no such intention existed, and no further attention was given to such averment. No issue tendered in the original petition appears to have been further considered at the trial, the plaintiff, in the meantime, having amended her petition, and pleaded a mutual mistake in the reservation of her deed, and asked a reformation thereof. The plaintiff's attitude on this issue is indicated by her following testimony:

"That, at the time of finally entering into the deal with defendants, Dr. McCartney told her that he wished to reserve the east part of the lot upon which to build a house for himself, and he wished the easement across the south 50 feet of the lot (west portion thereof) for·a drive, with trees on the sides, so that the house would make a vista from the street at the rear of this avenue of trees, and that the landscape to the west would make a

vista from the house, in return; and he has repeated this conversation at other times since.''

''That, when the deal was entered into between herself and the McCartneys, with reference to their having an exclusive right to improve or fix up the south 50 feet, nothing was said; nor was anything said by Dr. McCartney that he wanted to drive all over this strip, or to construct a number of rambling drives. That her understanding was, a straight drive from the street to the house, in order to make a vista to the house at the rear of the avenue of trees. That nothing was said about the kind of trees to be planted.''

''Cross-examination.

''That Dr. McCartney, on more than one occasion, told her that they intended to build at the end of a drive upon this south 50 feet, and that the drive was to have a row of trees on each side. Q. Where did you understand the rows of trees were to be? A. Along each side of the drive. Q. But where, relative to the 50 feet? A. One on the north line, and south line, of the 50 feet. One on the north side of the drive, and one on the south side, and it was to be a straight drive. Nothing was said about the location of the drive. Q. Anything said about its width? A. No; it was to be a drive. Q. It was not to be driveways? A. No, sir. Q. Nothing said about its width? A. No, sir. Q. Any mention made of 16 feet? A. There was no mention of width at this time. Q. By the way, in your amendment in which you ask for a reformation of this easement, where did you get this idea of 16 feet? A. That is the width of an ordinary alley, —a driveway,—it is sufficient * * * if our pavement on the highways is 16 feet wide, and allows two cars to pass, a driveway at the rear of the lot 16 feet would be sufficient to let two cars or teams pass.

''That there are no alleys between these tracts, and that a driveway, if it were constructed in the right way, could give access to Tracts 113, 114, and to the rear of Tract 115.

''That she bought the whole 150 feet that she might control the street frontage along the entire tract; that she did not wish the absolute control of any portion of the frontage to pass out of her hands.''

If there was any mutual mistake made in the reservations incorporated in the deed, the evidence thereof must be found in the foregoing. There was no other. Sufficient here to say that there was no evidence of mutual mistake. The reservations contained in the original contract were amplified in the deed, and were made more emphatic in favor of the defendants. These provisions were orally discussed by the parties. Both the plaintiff and her counsel read them. The plaintiff procured the making of the deed by her own counsel. The provisions thereof in favor of the defendants were advisedly incorporated. The decree of the district court reformed the reservations of the deed by reducing the width of the easement strip to 25 feet. This was the form of the relief, and the sole relief, awarded to plaintiff. The decree in this form appears to have been a laudable effort to arbitrate between litigants who lacked yielding capacity on their own part. We fail, however, to find a line of evidence in the record in support of the form of relief extended. The plaintiff did not testify that a dimension of 25 feet was ever considered. In testifying to what she had in her own mind at the time the reservations were incorporated, she fixes upon 16 feet as being the width of an alley, and therefore an appropriate width for a driveway. She did not claim that anything of that kind was ever said in any conversation on the subject between the parties. It must be held, therefore, that the decree was erroneous.

It is urged, however, for the plaintiff that the right of the defendants to beautify the strip was not exclusive, and that she herself had a right to share in such beautifying, and that, when she did so by the planting of a few shrubs, the defendant had no right to interfere with them. She concedes that what was done by her was done by mistake, and not pursuant to any intention on her part to improve or beautify such strip. If it be held that the right of beautifying the strip was not exclusive in the defendants, it could avail nothing affirmatively to the plaintiff. She could hold thereby only a right of obstruction. If the reservation contemplated the exercise of a joint right of beautification, it would be wholly vain and impossible unless the parties could work together in friendly co-operation. If they could do that, they would not need the sanctions of a contract obligation; and if they could not do so voluntarily, then they could not do so at all.

Unless, therefore, the defendants have the exclusive right to lay out the plan of beautification and to execute it, they have no right at all, in a practical sense. We think that the substance of the contract of reservation is that the 50-foot strip is to be beautified and used by the defendants as an approach to the contiguous properties of the defendants. To such use and beautification the plaintiff has consented; and by such consent she agrees, in effect, that she will not deem such use injurious to her property. She has, therefore, no right of interference with the defendants, so long as they act within the contemplation of the contract. If she had wished to join in a friendly spirit with the defendants, it doubtless could have been done, to the mutual advantage of both. From the attitude of these litigants toward each other, however, it is manifest that, if ornamentation is to be made, it must be done by one, and not by both. The evidence herein indicates clearly that the entry of both of these litigants upon these grounds at the same time would create an arena, rather than a park.

Clearly, the purpose of the reservations was for the benefit of the defendants. The ownership of the fee by the plaintiff protects her against alienation to others and the appropriation of the ground to purposes injurious to the plaintiff's property.

The petition of the plaintiff should have been dismissed, and it will be so ordered here. The decree of the district court is accordingly reversed, and the petition is dismissed, at the cost of the plaintiff in both courts.—*Reversed.*

STEVENS, C. J., and FAVILLE, KINDIG, and WAGNER, JJ., concur.