JOHN RUNCIMAN, Appellee, v. ELIZA BAILEY, Appellant.

No. 42104.

OCTOBER 24, 1933.

REHEARING DENIED FEBRUARY 8, 1934.

O. M. Slaymaker and R. E. Killmar, for appellant.

Watson & Watson, for appellee.

KINDIG, J.—John Runciman, the plaintiff-appellee, a man seventy years of age, owned a farm of approximately fifty acres in Warren county. There was coal under the land, and the appellee from time to time leased the coal rights and received royalties thereon.

In the year 1931 there was a mortgage on the farm for approximately $2,300, held by one C. C. Reynolds, a guardian for Helen Brewer. This mortgage became due and was foreclosed at the September, 1931, term of the Warren county district court. Reynolds, as guardian, at the special execution sale under the mortgage bid in the land for the full amount of the mortgage. On October 26, 1931, in accordance with law, a certificate of sale was duly issued to Reynolds, as such guardian. Thereafter, on the 9th day of December, 1931, C. C. Reynolds, the guardian, assigned and delivered said certificate to the defendant-appellant, Eliza Bailey.

So, on October 26, 1932, the year of redemption having expired, the sheriff of Warren county issued to the appellant a sheriff's deed for the lands in question in accordance with the certificate of purchase. Then, on December 7, 1932, the appellee, as plaintiff, commenced this action against the appellant, as defendant, to set aside the sheriff's deed and reform a written contract entered into by and between the parties on December 9, 1931. Under this agreement, the appellant was to purchase the certificate of sale from the aforesaid guardian for the sum of $2,319.93. As a consideration for the purchase on the appellant's part, the appellee agreed to pay him the amount thus expended with 6 per cent interest on or before October 26, 1932, the date on which the period of redemption would expire. A further provision of the contract was that the appellee could pay the appellant the said consideration from time to time from coal royalties on the land, or otherwise; and accordingly the appellee agreed to pay the appellant from such royalties 75 per cent thereof. If the appellee did not pay the appellant the said sum on or before October 26, 1932, the contract provided that ·the latter could take a sheriff's deed for the premises and have the immediate possession thereof. That contract, the appellee declares, was the result of mistake on his own part, and fraud on the part of the appellant. Because of such fraud and mistake, then, the appellee desires to have the contract so reformed that the agreement between him and the appellant would be that the appellant agreed to accept from the appellee 75 per cent of the coal royalties arising from the land here involved, until the amount of the indebtedness adjudicated in the foreclosure proceedings would be reduced to $2,000, and then the appellant, according to the true alleged agreement, would be required to accept a note for $2,000 from the appellee, bearing interest at the rate of 6 per cent per annum, due in five years and secured by a mortgage on the land. When the contract was thus reformed, the appellee prayed that it be specifically performed, and, as before said, the sheriff's deed be set aside.

By way of answer, the appellant denied the fraud and mistake, and in her cross-petition asked that the title to the land be quieted in her. The district court denied the appellant's prayer, set aside the sheriff's deed, reformed the contract, and ordered the specific performance thereof. Consequently the appellant appeals.

Under the record, the principal question involved is whether the appellee is entitled to a reformation of the contract. If he is

entitled to the reformation, the sheriff's deed should be set aside, and the contract should be specifically performed. On the other hand, if the contract should not be reformed, then the sheriff's deed should stand and the title to the land should be quieted in the appellant. A solution of the problem will be found in a consideration of the facts. There is little disagreement between the parties on the law applicable.

These parties, of course, had a right to make such legal contract as they desired. By reformation, therefore, we cannot make a new contract for them. Midland Mortgage Co. v. Rice, 197 Iowa 711, local citation, 719, 198 N. W. 24. In allowing a reformation, the court only can establish the actual contract intended by the parties, but which intention was frustrated either by fraud, accident, or mutual mistake. Rankin v. Taylor, 204 Iowa 384, 214 N. W. 725. Before a reformation in that case will be allowed, however, the evidence showing the fraud, accident, or mutual mistake must be clear, satisfactory, and convincing. The mere preponderance of the evidence in that regard is not sufficient. Rankin v. Taylor, supra; West v. Hysham, 214 Iowa 349, 242 N. W. 19; Kanofsky v. Woerderhoff, 211 Iowa 1175, 235 N. W. 305; Kowalke v. Evernham, 210 Iowa 1270, 232 N. W. 670; Scovel v. Gauléy, 209 Iowa 1100, 229 N. W. 684.

Under the record, then, was the written contract in question brought about, and the alleged real contract frustrated, because of fraud on the appellant's part and mistake on the part of the appellee? Frank Bailey, the husband of the appellant, Eliza Bailey, acted for her in all transactions related in the controversy. He was her agent, and his acts became hers. She committed no fraud. As a matter of fact, the appellant had little to do with the transaction. So, if there is fraud on her part, it arose through the acts and declarations of her husband, Frank Bailey. Although the appellee had only a common school education, he appears to be a man of ordinary ability. On previous occasions, he obtained loans on his farm and secured the same by mortgages. Apparently the appellee himself negotiated the loan involved in the mortgage which was foreclosed. When the mortgage matured, the appellee could not pay it. He attempted to borrow money from others in order to do so, but apparently failed.

During the sheriff's sale, on October 26, 1931, the appellee's son Joseph declares that he had a conversation with Frank Bailey,

the appellant's husband, about the land in controversy. According to Joseph Runciman, he asked Frank Bailey why he did not buy the land. At that time the appellee was not present. In response, Frank Bailey said that he considered the amount involved excessive. Replying to that, Joseph Runciman says that he suggested to Frank Bailey that the latter "take the coal lease royalty for seventy-five per cent of it (the amount of royalties involved in the coal lease) until the mortgage is reduced to where he (the appellee) can handle it." Then Frank Bailey replied, according to Joseph Runciman: "Well, that would be a pretty good idea." It is said by Joseph Runciman that he had a second similar conversation with Frank Bailey about two weeks afterward. The appellee, Joseph Runciman's father, appears not to have been present at any of these conversations. However that may be, the appellee and Frank Bailey had a conversation in reference to the sheriff's certificate and its purchase by the appellant. These negotiations between the appellee and Frank Bailey resulted in the written contract now sought to be reformed.

Frank Bailey and the appellee went to the office of Mr. Prall, a lawyer in Indianola, to have the contract drawn. In the presence of the appellee, Frank Bailey dictated to Mr. Prall the terms of the contract they desired him to prepare. During this dictation by Frank Bailey, the appellee listened and heard what was said. Mr. Prall, in accordance with his duty, prepared the contract as dictated by Frank Bailey. After the contract was prepared by Mr. Prall, it was submitted to the appellee. He read it and said: "I told him (Mr. Prall) I believed that was along the lines we agreed on." Whereupon the appellee signed the contract. Before signing the contract, the appellee declares that he knew Frank Bailey said nothing to Mr. Prall to the effect that the appellant should take back a $2,000 mortgage on the land after the appellee had paid the indebtedness down to that sum. If, as the appellee and his son suggest, they had previously talked to Frank Bailey about a contract providing that the appellant should take from the appellee such $2,000 mortgage for a five-year period, why did not the appellee mention it in Mr. Prall's office when the contract was being dictated and prepared? It is admitted that the appellee knew that Frank Bailey did not mention this $2,000 mortgage to Mr. Prall when dictating the terms of the contract. Nevertheless the appellee remained silent and did not mention the omission. When the appellee signed the contract, he knew that Frank Bailey had not told

Mr. Prall to make a provision for the $2,000 extension for a period of five years. Although the appellee knew of the omission, he signed the contract. Apparently the appellee, when signing the contract, said he did not exactly understand it, but he had no misunderstanding about the fact that Frank Bailey did not tell the scrivener to make provision for a five-year extension on the $2,000. There is something in the record to the effect that the appellee desired to consult Mr. Watson, an attorney at Indianola, before he signed the contract. This desire was expressed, not to Mr. Prall, who drew the contract, but to Frank Bailey. Bailey, it is said, remarked: "No use. He (Watson) will just work against us." Whatever effect Frank Bailey's remarks had upon the appellee, they did not deceive him concerning what was dictated by Frank Bailey to Mr. Prall. Even though the appellee did not consult Mr. Watson in reference to the contract, he knew, nevertheless, that Frank Bailey did not tell Mr. Prall to make provision in the contract for a five-year extension on $2,000. Frank Bailey testified that he did not have the alleged conversation with the appellee and his son, wherein it was agreed that the appellant should grant a five-year extension on the $2,000.

Up to this point, therefore, it cannot be held that the appellee has proven fraud on the appellant's part and mistake on the part of himself by clear, satisfactory, and convincing evidence. Nevertheless, it is argued by the appellee that support for his contention may be found in the fact that the contract does not grant him any benefits he did not have when the original certificate holder held the sheriff's certificate. Among the other benefits granted the appellee by the contract is the provision that payments might be made from time to time directly to the appellant rather than in a lump sum to the clerk of the district court. In view of the royalties which were accruing from month to month, this privilege may have been of considerable benefit to the appellee. After December 9, 1931, the appellee, in accordance with his contract with the appellant, collected the royalties, retained one-fourth thereof, and delivered the other three-fourths to the appellant. On or about October 21, 1932, approximately five days before the sheriff's deed was finally taken by the appellant, the appellee claims to have had another conversation with Frank Bailey in the appellant's presence. Upon that occasion the appellee says: "I asked him (Frank Bailey) if he would extend it (the mortgage), and I told him (Frank Bailey) if he would

not I would sell it (the land) and pay off. He (Frank Bailey) said: 'If you (appellee) think you can make it, that is all right.' " This, it is claimed, corroborates the appellee in his contention about the original contract above mentioned.

If the appellee thought he had, as he now claims, a written contract providing for the extension, why did he on the late date now under consideration ask Frank Bailey if he would extend the mortgage? Why did not the appellee tell Frank Bailey to extend the mortgage in accordance with the written agreement, rather than ask him for an extension? Moreover, if the appellee had the contract he claims with the appellant, why would he tell Frank Bailey that, unless the belated request for an extension was allowed, he would sell the land. When explaining why he made this late request from Frank Bailey, the appellee declared that it was in accordance with the previous oral contract. It is to be noted that the appellee continually refers to an oral contract. He did not say that he was making the late request in accordance with the previous written contract. But it is argued by the appellee that, upon the occasion just described, he paid the last half of the taxes upon the understanding that the appellant, because of the remarks of Frank Bailey, would extend the mortgage; that is, Frank Bailey, in return for the appellee's request for an extension, replied: "If you think you can make it, that is all right." Was that remark of Frank Bailey's in response to the appellee's request for an extension or was it directed to the appellee's declaration that he would sell the land and "pay off"? The record certainly is not clear. Might the appellee not have paid the last half of the taxes in order to induce the appellant to make the extension of the mortgage, then requested? At least there is no basis for an estoppel here, as claimed by the appellee.

This conclusion is strengthened by the future conduct of the appellee. After the appellant had taken the sheriff's deed, she, through her husband Frank Bailey, demanded possession of the premises. In accordance with that request, although the appellee himself remained upon the premises, he moved his automobile and machinery from the farm. Furthermore, the appellant demanded, through her husband, that the appellee assign her all the coal royalties. Accordingly the appellee made the assignment and delivered it to the appellant. Again, after the appellant received the sheriff's deed, she, through her husband, informed the appellee that she desired to place some new fences upon the land. Replying to

that suggestion the appellee told her to go ahead and build the fences. She then built the fences. These actions on the part of the appellee are inconsistent with his claim of fraud and mistake. Those actions, in fact, are consistent with the appellant's claim that the contract was made without fraud or mistake. When dealing, there was no confidential relationship between the parties. They dealt at arm's length. No attempt has been made to set out all the evidence. There is some conflict in the testimony. Certain facts and circumstances tend to sustain the appellee's contention.

We do not decide with whom the preponderance of the evidence may be, but it is manifest that the appellee has not established fraud and mistake by the clear, satisfactory, and convincing evidence required to warrant a reformation of the contract. Stillman v. Slifer Sav. Bank, 216 Iowa 957, 249 N. W. 230; West v. Hysham (214 Iowa 349, 242 N. W. 19), supra; Peilecke v. Cartwright, 213 Iowa 144, 238 N. W. 621; Spalding v. McCartney, 207 Iowa 1025, 221 N. W. 665; Galva First National Bank v. Reed, 205 Iowa 7, 215 N. W. 732; King v. Good, 205 Iowa 1203, 219 N. W. 517; Davis v. Norton, 202 Iowa 374, 210 N. W. 438; Hubbard Grain Co. v. Western Grain Dealers Mut. F. Ins. Co., 199 Iowa 1160, 201 N. W. 568; Rate v. Ryan Brothers, 199 Iowa 1050, 203 N. W. 13; Culbertson v. Smith, 193 Iowa 436, 187 N. W. 38. See Roberts v. Watson, 196 Iowa 816, 195 N. W. 211.

Under the record, therefore, the district court should not have allowed the reformation and ordered the specific performance of the reformed contract. The sheriff's deed should stand, and the title to the real estate should be quieted in the appellant.

Wherefore the judgment and decree of the district court is reversed, and the cause remanded, with directions to enter a decree in accordance with this opinion.—Reversed.

ALBERT, C. J., and EVANS, CLAUSSEN, and DONEGAN, JJ., concur.